Slip Op. 23-187

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AG DER DILLINGER HÜTTENWERKE, | |
| Plaintiff, | |
| and | |
| THYSSENKRUPP STEEL EUROPE AG, | |
| Plaintiff-Intervenor, | Before: Leo M. Gordon, Judge |
| v. | |
| UNITED STATES, | |
| Defendant, | Consol. Court No. 17-00158 |
| and | |
| NUCOR CORPORATION and SSAB ENTERPRISES LLC, | |
| Defendant-Intervenors. | |

## <u>OPINION</u>

[Commerce's <u>Fourth Remand Results</u> sustained.]

Dated: December 21, 2023

<u>Marc E. Montalbine</u>, deKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiff AG der Dillinger Hüttenwerke.  With him on the brief were <u>Gregory S. Menegaz</u>, <u>Alexandra H. Salzman</u>, and <u>Merisa A. Horgan</u>.

<u>Robert L. LaFrankie</u>, Crowell & Moring, LLP of Washington, D.C., for Plaintiff-Intervenor thyssenkrupp Steel Europe AG.[1]

---

[1] Plaintiff-Intervenor thyssenkrupp Steel Europe AG did not file any comments on the <u>Fourth Remand Results</u>.

Consol. Court No. 17-00158                                                Page 2

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C., for Defendant United States.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director.  Of counsel was Ayat Mujais, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, D.C.

Jeffrey Gerrish, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor SSAB Enterprises LLC.  With him on the brief were Roger B. Schagrin, Luke A. Meisner, and Nicholas J. Birch.[2]

Stephanie M. Bell, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Nucor Corporation.  With her on the brief were Alan H. Price and Christopher B. Weld.

Gordon, Judge: This consolidated action involves challenges to the final determination in the antidumping ("AD") investigation conducted by the U.S. Department of Commerce ("Commerce") of certain carbon and alloy steel cut-to-length plate ("CTL plate") from the Federal Republic of Germany.  See Certain Carbon and Alloy Steel Cut-to-Length Plate from the Federal Republic of Germany, 82 Fed. Reg. 16,360 (Dep't of Commerce Apr. 4, 2017) ("Final Determination"), and accompanying Issues and Decision Memorandum, A-428-844 (Mar. 29, 2017), http://enforcement.trade.gov/frn/summary/germany/2017-06628-1.pdf (last visited this date) ("Decision Memorandum").[3]

Before the court are Commerce's Final Results of Redetermination Pursuant to Court Remand, ECF No. 184 ("Fourth Remand Results") filed pursuant to the court's

---

[2] Defendant-Intervenor SSAB Enterprises LLC also did not file any comments on the Fourth Remand Results.

[3] The court previously issued a partial judgment as to the Ilsenburger and Salzgitter consolidated plaintiffs.  See Slip Op. 23-160, ECF No. 197 (Nov. 15, 2023) (opinion granting partial judgment as to issues raised by consolidated plaintiffs).

remand order in <u>AG der Dillinger Huttenwerke v. United States</u>, 47 CIT \_\_\_, 648 F. Supp. 3d 1321 (2023) ("<u>Dillinger III</u>").  The court presumes familiarity with the history of this action.  Plaintiff AG der Dillinger Hüttenwerke ("Dillinger") challenges Commerce's decision not to revisit its rejection of Dillinger's proposed quality code for sour service pressure vessel plate, while Defendant-Intervenor Nucor Corporation ("Nucor") challenges Commerce's determination to adjust its model match methodology to include a separate quality code for sour transport plate in calculating Dillinger's dumping margin. <u>See</u> Pl. Dillinger's Comments in Partial Opp'n to Final Results of Redetermination, ECF No. 192 ("Dillinger Opp'n Comments"); Def.-Int. Nucor Corp.'s Comments on Final Results of Redetermination, ECF No. 193 ("Nucor Opp'n Comments"); <u>see also</u> Def.'s Resp. to Comments on Remand Redetermination, ECF No. 199 ("Def.'s Resp."); Pl. Dillinger Comments in Partial Support to Final Results of Redetermination, ECF No. 200 ("Dillinger Support Comments"); Def.-Int. Nucor Corp.'s Comments in Support of Final Results of Redetermination, ECF No. 201 ("Nucor Support Comments").  The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii),[4] and 28 U.S.C. § 1581(c) (2018).

For the reasons set forth below, the court sustains the <u>Fourth Remand Results</u>.

---

[4] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.  3 Charles H. Koch, Jr. & Richard Murphy, Administrative Law and Practice § 9.24[1] (3d ed. 2023).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances

presented by the whole record." 8A <u>West's Fed. Forms</u>, National Courts § 3.6 (5th ed. 2023).

## II. Discussion

On remand, as directed by the court in <u>Dillinger III</u>, Commerce "reconsidered its rejection of Dillinger's proposed quality code for sour service petroleum transport plate (<u>i.e.</u>, 771) in light of [its] analysis of the facts in [<u>Bohler Bleche GMBH & Co. KG v. United States</u>, 42 CIT ___, 324 F. Supp. 3d 1344 (2018) ("<u>Bohler</u>")]." <u>Fourth Remand Results</u> at 3. Commerce examined the facts and decision in <u>Bohler</u> as compared to the facts and circumstances in the present matter, and ultimately found that "the facts of this case are analogous to those of <u>Bohler</u>." <u>Id.</u> at 5. As a result, Commerce "reconsidered [its] rejection of Dillinger's proposed quality code for sour service petroleum transport plate (<u>i.e.</u>, 771) and … included this quality code in the CONNUMs used in the margin calculations for Dillinger to account for commercially significant physical differences between sour service petroleum transport plate and other steels designated specifically for the transport of petroleum products." <u>Id.</u> at 6. Consequently, "the final estimated weighted-average dumping margin for Dillinger increas[ed] to 4.99 percent." <u>Id.</u>; <u>see also</u> Dillinger Opp'n Comments at 6 n.1 ("Dillinger's revised margin in the final results of redetermination has increased from 4.98% to 4.99%.").

Dillinger does not challenge Commerce's findings in the <u>Fourth Remand Results</u>, but rather emphasizes that "Commerce Properly Determined That the Facts of This Case Are Analogous to Those of <u>Bohler</u>." Dillinger Opp'n Comments at 1. However, Dillinger argues that "[i]n Light of Its Determination That the Facts of This Case Are Analogous to

Those of <u>Bohler</u>, Commerce Should Also Accept Dillinger's Quality Code for Sour Service Pressure Vessel Steel (Code 759)." <u>Id.</u> at 2. Acknowledging that the court has already rejected Dillinger's claim as to sour service pressure vessel steel, Dillinger maintains that the court "Should Revise Its August 2021 Order and Remand Commerce's Determination Concerning the Quality Code for Sour Service Pressure Vessel Plate." <u>Id.</u> at 7. Specifically, Dillinger contends that a "key holding in <u>Bohler</u> is that the Court specifically found that the plaintiffs' proposed revisions to Commerce's model-match methodology were not untimely even though they were made after the initial comment period had expired and Commerce had issued its final product characteristics." <u>Id.</u> at 8 (citing <u>Bohler</u>, 324 F. Supp. 3d at 1352). Dillinger reasons that "[i]f such significant additions to the model-match methodology [as those made in <u>Bohler</u>] cannot properly be considered untimely, then the limited addition of a Quality code for sour service pressure vessel steel as specifically permitted by the questionnaire instructions can certainly not be considered untimely." <u>Id.</u> at 4.

The Government disagrees and maintains that there is no basis for revisiting the sour service pressure vessel plate issue that was previously decided by the court. <u>See</u> Def.'s Resp. at 5–6. Defendant explains that Commerce found that Dillinger provided a similar revision to the model match hierarchy used in <u>Bohler</u> and provided information on the record like that submitted in <u>Bohler</u> to demonstrate the consistently higher costs and net price for sour service petroleum transport plate. <u>Id.</u> Thus, based on the information on the record and its similarities to the information submitted in <u>Bohler</u>, Commerce included Dillinger's proposed quality code for sour service petroleum transport

plate, i.e., 771, in the control numbers used in the margin calculations for Dillinger to account for commercially significant differences.  Id. at 6.

Defendant highlights that this Court's remand order "only directed Commerce on remand to reconsider its decision to reject Dillinger's proposed quality code for sour service petroleum transport plate, and not Dillinger's proposed quality code for sour service pressure vessel steel."  Id. at 5 (citing Dillinger III, 47 CIT at ___, 648 F. Supp. 3d at 1333–36).  In the Government's view, the limited nature of the remand made sense in light of the fact that the court had "already sustained Commerce's rejection of Dillinger's proposed quality code for sour service pressure vessel steel."  Id. (citing August 2021 Order, ECF No. 121, which upheld rejection of Dillinger's proposed quality code "because it was not submitted within the time for submitting model match comments, nor did Dillinger provide information during the investigation that would justify revisiting this issue").  Commerce decided that it would not reconsider its "rejection of Dillinger's proposed quality code for sour service pressure vessel steel, given that the Court already sustained Commerce's rejection of this quality code."  Fourth Remand Results at 9 (citing August 2021 Order).

As the parties acknowledge, the court has already sustained Commerce's rejection of Dillinger's proposed quality code for sour service pressure vessel steel.  See, e.g., Dillinger Opp'n Comments at 7 (recognizing that court would need to "revise its August 2021 Order" in order to grant Dillinger relief on this issue); Def.'s Resp. at 5 (citing August 2021 Order); Nucor Opp'n Comments at 2 n.1.  Notably, the court did not direct Commerce to reconsider this issue on remand, so Dillinger's arguments on this issue

essentially amount to a request for reconsideration of the court's <u>August 2021 Order</u>. The court observes that Dillinger did not frame its arguments against the standard for a motion for reconsideration.  <u>See, e.g.</u>, USCIT R. 59 (setting forth guidance for moving for reconsideration of a court's judgment); USCIT R. 52(b) (permitting parties to move court to amend its findings and its judgment).  Furthermore, while Dillinger's arguments highlight the similarities of its circumstances with those in <u>Bohler</u>, Dillinger does not account for the factual distinctions specific to this issue that may justify differing outcomes.  As Defendant-Intervenor Nucor points out, Dillinger's reliance on <u>Bohler</u> is misplaced as "[i]n <u>Bohler</u>, the Court rejected the argument that plaintiffs' model match challenges were untimely."  Nucor Support Comments at 3.  As the <u>Bohler</u> court explained:

> Plaintiffs raised their concerns at every turn.  Plaintiffs proposed addition of a GRADE field to account for alloy content was submitted with their questionnaire responses on July 15, 2016, just 35 days after the Department had issued its revised model-match methodology [and] four months prior to the Department's <u>Preliminary Determination</u> . . . .  Commerce then reviewed Plaintiffs' GRADE-field proposal and sought additional clarifying information on this issue in its September 14, 2016 supplemental questionnaire, which Plaintiff then provided.  <u>See</u> Pls. Supp. Questionnaire Resp. Sec. D & E 7.  The court will not now entertain the Government's argument that the model-match methodology was a closed issue prior to July 15, 2016.

<u>Bohler</u>, 42 CIT at ___, 324 F. Supp. 3d at 1352.  "In contrast, here, Dillinger not only failed to raise this issue in its product characteristic comments, but again failed to raise it in its initial questionnaire response.  This is a fundamental difference between the two proceedings."  Nucor Support Comments at 3–4.

While the court maintains the inherent authority to reconsider its ruling sustaining Commerce's rejection of the proposed quality code for sour service pressure vessel steel, Dillinger has not made the requisite showing to demonstrate that reconsideration is appropriate here.  Accordingly, the court rejects Dillinger's challenge and will sustain the Fourth Remand Results.

Curiously, despite Commerce's remand resulting in an increase to Dillinger's calculated dumping margin, Nucor challenges the Fourth Remand Results, arguing that Commerce's determination is "unsupported and insufficiently explained."  See Nucor Opp'n Comments at 2.  Specifically, Nucor contends that "although Commerce asserts that Dillinger has 'provided information on the record to demonstrate the consistently higher costs and net prices for sour service petroleum transport plate, along with supporting documentation,' the agency has provided no discussion or analysis of this information."  Id. at 3 (quoting Fourth Remand Results at 5–6).  Nucor further maintains that Commerce failed to "provide any citation to the record to support its determination or otherwise identify what information it was relying on or found to be persuasive."  Id.

Nucor also highlights that Commerce's draft remand redetermination differed significantly from the final determination in the Fourth Remand Results, and laments that Commerce failed to "provide any explanation of why [its draft remand redetermination] conclusion was no longer supported or what record evidence supported the opposite conclusion."  Id. at 3–4.  For instance, Nucor notes that "[i]n contesting Commerce's original determination before this Court, as well as challenging the agency's draft remand determination, Dillinger relies predominantly on information and analysis that it never

presented to Commerce in the original investigation." Id. at 4.  Nucor maintains that Commerce failed to "discuss the information on the record, identify the record evidence it relied on, or analyze how this information supports its conclusion." Id. at 6–7.  Nucor thus urges the court to conclude that "Commerce's brief, uncited statements that Dillinger provided certain information, without discussing what that information was or how it was taken into consideration, does not provide the guidance and clarity required for there to exist a rational connection between the facts found and the choices made." Id. at 7.

Nucor's arguments are unpersuasive.  Commerce's remand redetermination explained why the facts of this action are analogous to Bohler.  In particular, Commerce stated that the respondent in Bohler "argued for a revision to the model-match hierarchy, through the addition of two product characteristic fields (i.e., 'grade' and 'process') to account for commercially significant physical differences, while Dillinger has similarly proposed a revision to the model match hierarchy, through the additional quality product characteristic code (i.e., 771), to account for the different physical characteristics of sour service petroleum transport plate." Fourth Remand Results at 5.

"Additionally, in Bohler, the respondent provided information on the record to support the additional product characteristic to demonstrate the impact of alloy content on the {cost of production} of its products, while Dillinger similarly provided information on the record to demonstrate the consistently higher costs and net prices for sour service petroleum transport plate, along with supporting documentation." Id. at 5–6. This supporting documentation included: (1) sales and cost information for products with its proposed quality code, demonstrating the consistently higher net prices and costs

for sour service petroleum transport plate and other steels designated specifically for the transport of petroleum products; and (2) documentation comparing the manufacturing of sour service petroleum transport plate to other steels designated specifically for the transport of petroleum products, as well demonstrating the unique physical properties of sour service petroleum transport plate. Id. at 5; see Dillinger Section B Response and accompanying home market sales database (July 15, 2016) (PD[5] 194; CD 77, 88); Dillinger Section C Response and accompanying U.S. sales database (July 15, 2016) (PD 198; CD 95, 96); Dillinger Section D Response and accompanying cost database (July 15, 2016) (PD 199; CD 103).   As a result, Commerce reconsidered its rejection of the proposed quality code for sour service petroleum transport plate and determined to include the quality code of 771 "for Dillinger to account for commercially significant physical differences between sour service petroleum transport plate and other steels designated specifically for the transport of petroleum products." Fourth Remand Results at 6.   Thus, contrary to Nucor's argument, Commerce addressed why the facts of this case are analogous to Bohler and that there was sufficient record evidence to support this determination. Id. at 9.

Nucor also argues that Commerce relied on information and analysis that Dillinger never presented to Commerce in the investigation. See Nucor Opp'n Comments at 5–6. The court disagrees.   While Dillinger provided more analysis of this issue in its briefing

---

[5] "PD ___" refers to a document contained in the public administrative record, which is found in ECF No. 23-5, unless otherwise noted.   "CD ___" refers to a document contained in the confidential administrative record, which is found in ECF No. 23-6, unless otherwise noted.

Consol. Court No. 17-00158                                                                    Page 12

before the Court, the information on which the analysis was based was already on the record.  <u>See</u> Dillinger Section B Response and accompanying home market sales database (July 15, 2016) (PD 194; CD 77, 88); Dillinger Section C Response and accompanying U.S. sales database (July 15, 2016) (PD 198; CD 95, 96); Dillinger Section D Response and accompanying cost database (July 15, 2016) (PD 199; CD 103); <u>see also</u> Nucor Opp'n Comments at 4 n.3 ("<u>To be clear, Nucor is not claiming that Dillinger has relied on information that was not on the record in the underlying investigation</u>, but instead that it has relied on information and analysis that was not presented or identified as relevant to the agency in support of its argument regarding the model match methodology." (emphasis added)).

Given that Commerce reasonably found the facts of <u>Bohler</u> to be analogous to the circumstances in this matter, and that Commerce reasonably explained why a similar analysis and outcome should apply here in light of the court's decision in <u>Dillinger III</u>, the court will reject Nucor's challenge and sustain the <u>Fourth Remand Results</u>.

### III. Conclusion

For the foregoing reasons, Commerce's <u>Fourth Remand Results</u> are sustained. Judgment will enter accordingly.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated: December 21, 2023
   New York, New York